```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA

                         CHARLESTON
```

**JEFFREY BRANDON ARTHUR,**

      **Plaintiff,**

v.                                     Case No. 2:09-cv-00807

**GERALD WALLS, Correctional Officer,**
**Correctional Officer "ASHE" and**
**JOHN MCKAY, Administrator,**
**South Central Regional Jail,**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the defendants' Motion to Dismiss (docket sheet document # 9) and a Memorandum of Law in support thereof (# 10). This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### PROCEDURAL HISTORY

On July 14, 2009, Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging that, on October 13, 2007, he was physically assaulted by defendants Walls and Ashe, Correctional Officers at the South Central Regional Jail ("SCRJ"), where Plaintiff was then incarcerated. (# 1). Specifically, the Complaint states:

On October 13, 2007, Saturd[a]y night at approximately 10:30-10:45pm Lock-down everybody was going to their cells in C-5 (presentence pod). C.O. Walls was manually closing cell doors by way of hand-shutting and was not wearing his state-issued rubber gloves. Upon closing my cell door, cell '6,' C.O. Walls began to holler profane language outside my cell door. Other inmates had placed something 'sticky' or 'gooey' on my door handel [sic; handle] because they got me and I's in my cell washing the substance off my hands when I turned to look out my cell window. There was C.O. Walls, standing there, cursing everyone and anyone who was watching and or laughing at him. I smiled as I looked out my window, C.O. Walls looked back at me and said, "You think it's f*&king funny?" And that's when he told the tower over his radio, to open cell '6,' he ran in my cell with C.O. Ashe behind him. He grabbed me by the throat and shoved me against the wall pinching my windpipe shut. I could not breathe. When I put my hands on Walls' wrist and pushed it to the side so I could breathe, that is when Walls began to throw his fists at my face. Then, C.O. Ashe grabbed me from behind choking me unconscious while allowing Walls to assault my helpless body. When I tried to scream for help, I felt, more than heard, what sounded like my left arm breaking, tearing at my elbow as Walls twisted my arm. I never once fought back or tried to resist the C.O.s. When I woke, I was gagging for air and could hardly breathe. I was taken to an interview-room and C.O. Ashe came in threatening to do more bodily harm if I told his superviser [sic; supervisor] what they did to me, then stepped out. When Corporal Khunts [sic; Koontz] stepped in to interview me, I told him what happened exactly what I've written and he said he talked to my celly who gave the exact same statement confirming that the guards jumped me and I did not fight back. Corp. [Koontz] then promised me that I was safe and he would take actions against the C.O.s. I was then seen by medical and released to go back to my section, without being written-up. I filed aggreivance [sic; a grievance] to John McKay, administrator, against the C.O.s and never got a response. Not sure how long it took medical to give me an x-ray, they with-held all information to my questions about the severe pain in my left arm; gave me tylenol for pain. Nothing has ever been done about this and even my court-appointed attorney, Mark French, would not take on this case for me. Lastly, I was taken to the hole after having had x-rays taken, filed several grievances with no

response what-so-ever.

(# 1 at 4-6). Plaintiff's statement for relief states:

> I want what is legally right. I want justice to be served to those who have wronged me. These men should pay for thier [sic; their] actions like any other individual. I want to see these men stripped of [their] jobs so that this never happens to anyone else ever again. I am sueing [sic; suing] at the sum of $3 million dollars. I believe John McKay should also take responsibility in paying the sum for condoning and allowing these actions to occur in his facility, knowing but doing absolutly [sic; absolutely] nothing about it. His fate, I shall leave to the court to decide.

(Id. at 5).

On August 13, 2009, the defendants filed a Motion to Dismiss, supported by an Affidavit of John L. King II (# 9), and a Memorandum of Law (# 10), asserting that Plaintiff failed to exhaust his administrative remedies, that the defendants are immune from suit under the Eleventh Amendment to the United States Constitution, and that the defendants are entitled to qualified immunity.

On August 27, 2009, Plaintiff filed a Motion to Strike, in which he asserted, in pertinent part, that he had never received an Inmate Handbook, which contains the grievance procedures that must be followed by inmates confined in the regional jails. Plaintiff's motion stated that, although he signed for an Inmate Handbook when he arrived at the Tygart Valley Regional Jail (to where he was transferred from the SCRJ, sometime after the subject incident), he claim that he never actually received the handbook. (# 12 at 1-2).

On November 4, 2009, the undersigned denied Plaintiff's Motion to Strike, but ordered the defendants to file a supplemental response addressing the alleged failure of Plaintiff to receive an Inmate Handbook, and to further address the issue of exhaustion of administrative remedies. (# 13).

On November 30, 2009, the defendants filed a Supplement to Motion to Dismiss (# 16). The Supplement states that Plaintiff was issued, and signed for, an Inmate Handbook on January 22, 2007, before the subject incident occurred, and that he was completely aware of the inmate grievance procedure. (Id. at 1). The Supplement further states:

> Finally, Inmate Arthur filed only one grievance to the administrator concerning the subject matter of this litigation. (Exhibit 2.) Inmate Arthur has failed to appeal his grievance, or take any of the steps necessary to exhaust administrative remedies. (Exhibit 1 of Motion to Dismiss.)

(Id. at 2).

On December 30, 2009, Plaintiff filed a Response to the defendants' Motion to Dismiss (# 18). The Response objects to the defendants' Motion to Dismiss and again asserts that Plaintiff's Eighth Amendment rights were violated when he was allegedly assaulted by the defendants. The defendants did not file a reply brief.

## ANALYSIS

**A.   Failure to exhaust administrative remedies.**

Section 1997e(a) of the PLRA states that, "[n]o action shall

4

be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" means " . . . conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings." 18 U.S.C. § 3626(g)(2). A "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

In Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. Id. at 741. In Booth, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. Id.

In Porter v. Nussle, 534 U.S. 516, 532 (2002), the Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or other some wrong." Not only must a prisoner exhaust his administrative remedies, but he must also do so properly. Proper exhaustion "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90, 126 S. Ct. 2378, 2385 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). [Emphasis in the original.]) That is, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." 548 U.S. at 90-91.

The Court ruled in Jones v. Bock, 549 U.S. 199, 216 (2007), that an inmate's failure to exhaust remedies under the PLRA is an affirmative defense; the inmate need not demonstrate in his complaint that he has exhausted applicable remedies. Jones also held that an inmate does not automatically fail to exhaust when the inmate sues one or more defendants not named in the pertinent grievances. Id., at 219. If a complaint contains claims, some of which have been exhausted, and some of which have not been exhausted, the entire complaint is not dismissed; the court proceeds only on the exhausted claims. Id., at 222.

The West Virginia statute pertaining to the requirement that prisoners exhaust remedies is found at West Virginia Code § 25-1A-

6

2(a), which provides as follows:

> (a) An inmate may not bring a civil action until the administrative remedies promulgated by the facility have been exhausted; *Provided*, That the remedies promulgated by the facility will be deemed completed within sixty days from the date the inmate filed his or her initial complaint if the inmate fully complied with the requirements for filing and appealing the administrative complaint.

The Code also requires the Commissioner of the Division of Corrections and the Executive Director of the Regional Jail Authority to establish administrative procedures for processing prisoners' complaints about the conditions of their confinement. W. Va. Code § 25-1A-2(b).

The West Virginia Regional Jail and Correctional Facility Authority ("the Authority") has promulgated its procedures through the publication of its "Handbook of Inmate Rules and Procedures," which contains an "Inmate Request and Grievance Procedure." W. Va. C.S.R. § 94-5-2 (The Handbook is adopted by reference). The procedure calls for a grievance to be addressed in writing to the Administrator, with the availability of an appeal to the Chief of Operations of the Authority and, ultimately, to the Office of the Executive Director. (Handbook, at 11-12.) The Authority has also published Policy & Procedure Statement Number 14003 to the same effect.

Attached to the defendants' Supplement to the Motion to Dismiss (# 16), is a copy of a grievance filed by Plaintiff on October 13, 2007, which states:

> Am grieving over the fact that I was wrongfully jumped and assaulted by "2" officers in which I never swung back on this evening Oct. 13, 2007 approx. 10:45 pm. Officer Walls & Officer Ash choked me out, kicked and beat on me for what reason?  Me laffing [sic; laughing]???  It is now morning after, my left arm and left side of body is badly hurting.  Officer Ashe & Walls laffed [sic; laughed] and threatened to do this hainess [sic; heinous] criminal act again first chance they get.  This is a "criminal act" and must be remedyed [sic; remedied].  I want charges filed on these criminals and this to be remedyed [sic; remedied] as soon as possible.  Thank you.  Am notifying my lawyer & my family.

(Attach. to # 16).  The response Plaintiff received states:

> You may use the phone to call Law Enforcement.  However the reports reflect that you failed to comply with officers orders and made physical contact with the C/O first; you may find yourself charged with a criminal act.

(Id.)  The response is dated October 15, 2007; however, the undersigned cannot read the signature of the official who executed the response.  (Id.)

According to the Affidavit of John L. King II, the Chief of Operations of the West Virginia Regional Jail and Correctional Facility Authority, who is the person who handles the second level of the grievance process, Plaintiff did not file a grievance appeal to him, or to the Executive Director concerning this incident. (Attach, to # 9, ¶ 4).

Based upon this information, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff failed to exhaust the available administrative remedies before filing the instant Complaint, and that the Complaint must be dismissed pursuant to

42 U.S.C. § 1997e(a).

**B.     The defendants' other grounds for dismissal.**

Because the undersigned has proposed that the presiding District Judge find that Plaintiff has failed to exhaust his administrative remedies, and such a failure requires dismissal of the Complaint, the undersigned finds it unnecessary to address the defendants' other grounds for dismissal.

### RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the defendants' Motion to Dismiss (# 9) be granted and this civil action be dismissed.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (mailing), from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of _de_ _novo_ review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Chief Judge Goodwin.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff and counsel of record.

January 27, 2010
Date

Mary E. Stanley
United States Magistrate Judge